FARM BENEDICT SUGIHARA
A Limited Liability Law Partnership LLP

THOMAS BENEDICT        5018-0
tbenedict@fbslawyers.com
DAWN T. SUGIHARA        7631-0
dsugihara@fbslawyers.com
Bishop Street Tower, Suite 1601
Topa Financial Center
700 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 451-3180

Attorneys for Defendant
CONTINENTAL INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

STATE OF HAWAII

| | |
|---|---|
| FIRST INSURANCE COMPANY OF HAWAII, LTD., <br><br>        Plaintiff, <br><br>   vs. <br><br> CONTINENTAL INSURANCE COMPANY and CONTINENTAL INSURANCE AGENCY OF HAWAII, LTD., <br><br>        Defendants. | CIVIL NO. CV 23-00198 JMS-RT <br><br> DEFENDANT CONTINENTAL INSURANCE COMPANY'S **ANSWER, DEFENSES, AND COUNTERCLAIM;** EXHIBITS "A"-"B"; **DEMAND FOR JURY TRIAL**; CERTIFICATE OF SERVICE |

## DEFENDANT CONTINENTAL INSURANCE
## COMPANY'S ANSWER, DEFENSES, AND COUNTERCLAIM

Pursuant to Federal Rules of Civil Procedure 8 and 81, The Continental Insurance Company ("Continental"), by and through its attorneys, Farm Benedict Sugihara, A Limited Liability Law Partnership, responds to Plaintiff First Insurance Company of Hawaii, Ltd.'s ("FICOH") Complaint filed on March 30, 2023 as follows:

## JURISDICTION AND VENUE

**PARAGRAPH 1**:  [The Circuit Court for the First Circuit of the State of Hawaii] has jurisdiction over the subject matter of this action pursuant to Hawaii Revised Statute (HRS) § 632-1, as this action seeks a declaratory judgment under the laws of the State of Hawaii, and the amount in controversy exceeds $3.5 million.

**ANSWER TO PARAGRAPH 1**:  Continental admits that FICOH seeks a declaratory judgment under the laws of the State of Hawaii and that the amount in controversy exceeds $3.5 million. The remaining allegations of the paragraph are denied.

**PARAGRAPH 2**:  Venue is proper in [the Circuit Court for the First Circuit of the State of Hawaii] pursuant to HRS § 603-36, as the Defendants reside in the First Circuit, and the cause of action arose in [the First] Circuit.

**ANSWER TO PARAGRAPH 1**:  Denied. Venue is proper in this Court because "a substantial part of the events or omissions giving rise to the claim occurred" in the District of Hawaii.  28 U.S.C. § 1391.

2

## PARTIES

**PARAGRAPH 3**: FICOH is a corporation organized under the laws of the State of Hawaii, with its principal place of business at 1100 Ward Avenue, Honolulu, Hawaii 96814, United States.

**ANSWER TO PARAGRAPH 3**: Admitted.

**PARAGRAPH 4**: Defendant Continental Insurance Company is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 151 N Franklin Street, Chicago, Illinios 60606, United States.

**ANSWER TO PARAGRAPH 4:** Continental admits it is a corporation organized under the laws of the State of Pennsylvania, and that its principal place of business is located in Chicago, Illinois.

**PARAGRAPH 5**: Defendant Continental Insurance Agency of Hawaii, Ltd. ("Continental Hawaii") is a corporation organized under the laws of the State of Hawaii, with its principal place of business at Kalakaua Ave, Apt. 1501, Honolulu, Hawaii 96826, United States. Since 1979, Continental Hawaii has been an appointed agent of Continental Casualty Company, which is a sister entity of Continental under the umbrella of the CNA Financial Group.

**ANSWER TO PARAGRAPH 4:** Continental admits that Continental Hawaii is a corporation organized under the laws of the State of Hawaii and has its principal place of business in Hawaii. Continental further admits Continental Hawaii has been an appointed agent of Continental Casualty Company since 1979. Continental denies, however, that Continental was a "sister entity" or affiliated with Continental Casualty Company until a 1995 merger.

3

# FACTUAL ALLEGATIONS

**PARAGRAPH 6**:  Glens Falls Insurance Company issued Policy No. L 1294808 to the Roman Catholic Church in the State of Hawaii (the "Glens Falls Policy"), covering the period of June 1, 1979 to June 1, 1982.

**ANSWER TO PARAGRAPH 6**:  Admitted.

**PARAGRAPH 7**:  Continental became the successor in interest to the Glens Falls Policy.

**ANSWER TO PARAGRAPH 7**:  Admitted.

**PARAGRAPH 8**:  Insureds under the Glens Falls Policy have been seeking defense and indemnity for several substantial sexual-abuse claims made possible by passage of a statute-of-limitations reviver statute.

**ANSWER TO PARAGRAPH 8**:  Admitted.

**PARAGRAPH 9**:  Continental does not appear to be registered to do business in Hawaii, and on information and belief, Continental Insurance Agency of Hawaii services the Glens Falls Policy.

**ANSWER TO PARAGRAPH 9**:  Denied. Continental has been an authorized insurer in Hawaii since 1977. And Glens Falls Insurance Company, the company that issued the Glens Falls Policy, was likewise authorized to do business in Hawaii starting in 1977. Furthermore, Continental Hawaii has no connection whatsoever with any involvement in the handling of claims under the Glens Falls Policy, as such claims are handled by Continental.

**PARAGRAPH 10**:  Continental asserts that FICOH is responsible for those claims as a reinsurer.

**ANSWER TO PARAGRAPH 10**:  Admitted.

**PARAGRAPH 11**:  As a result of that assertion, Continental is withholding payment it owes FICOH.  In fact, Continental is withholding *more* from FICOH than the value of the claims currently pending under the Glens Falls Policy.

**ANSWER TO PARAGRAPH 11**:  Denied.

**PARAGRAPH 12**:  Continental concedes, however, that it cannot locate a written reinsurance between the two parties memorializing this agreement.

**ANSWER TO PARAGRAPH 12**:  Admitted.

**PARAGRAPH 13**:  FICOH cannot locate a written reinsurance agreement either.

**ANSWER TO PARAGRAPH 13**:  Admitted that FICOH has represented

that it cannot locate a written reinsurance agreement related to the Glens Falls

Policy.

**PARAGRAPH 14**:  For example, this alleged reinsurance agreement is not listed in the disclosure schedule of reinsurance treaties attached to a 1988 stock purchase agreement whereby Tokio Marine and Fire Insurance Company, Ltd. (Tokio Marine") acquired 40% of FICOH.  Notably, Tokio Marine was effectively acquiring these shares *from* Continental, as Continental previously owned and controlled FICOH.[1] Continental would have ensured that FICOH listed a reinsurance contract that benefitted Continental in that disclosure.

**ANSWER TO PARAGRAPH 14**:  Admitted that Tokio Marine and Fire

Insurance Company, Ltd. acquired 40% of FICOH from a Continental subsidiary

---

[1] Tokio Marine now wholly owns FICOH.

4872-4029-9104.1

pursuant to 1988 stock purchase agreement. The remaining allegations of the

paragraph are denied.

**PARAGRAPH 15**:  Similarly, historically Continental's financials did not
reflect this alleged reinsurance agreement between FICOH and Glens Falls.

**ANSWER TO PARAGRAPH 15**: Given the early stages of the proceeding,

Continental lacks knowledge or information sufficient to form a belief about the

truth of FICOH's allegation. Continental further states that its financial statements

would not ordinarily reflect a single reinsurance agreement.

**PARAGRAPH 16**:  FICOH has been directly and adversely affected by
Continental's claims that FICOH is responsible for defense and indemnity as a
reinsurer under the Glens Falls Policy, despite the absence of any written
agreement for such responsibility.

**ANSWER TO PARAGRAPH 16**:  Admitted that as a reinsurer of the

Glens Falls Policy, FICOH is responsible for the defense and indemnity costs

Continental has paid under the Glens Falls Policy. The remaining allegations of the

paragraph are denied.

## COUNT I - DECLARATORY JUDGMENT

**PARAGRAPH 17:**  FICOH incorporates by reference the allegations
contained in paragraphs 1 through 16.

**ANSWER TO PARAGRAPH 17**: Continental incorporates by reference its

responses to paragraphs 1 through 16 of the Complaint.

4872-4029-9104.1

**PARAGRAPH 18**:  An actual and justiciable controversy exists between FICOH, Continental, and Continental Hawaii regarding whether FICOH is obligated to reinsure the Glens Falls Policy.

**ANSWER TO PARAGRAPH 18**:  Admitted there exists a controversy, between Continental and FICOH only, pertaining to the reinsurance agreement between Continental and FICOH in which FICOH agreed to reinsure the Glens Falls Policy. The remaining allegations of the paragraph are denied.

**PARAGRAPH 19**:  There is a legal uncertainty as to the parties' obligations under the Glens Falls Policy because no contract exists, but Continental asserts FICOH is obligated to reinsure the policy based on historical practice.

**ANSWER TO PARAGRAPH 19**:  Admitted that Continental asserts FICOH is obligated to reinsure the Glens Falls Policy. The remaining allegations of the paragraph are denied – specifically that FICOH's obligation is based on historical practice, because FICOH's obligation is based on an agreement between FICOH and Glens Falls for FICOH to reinsure the Glens Falls Policy.

**PARAGRAPH 20**:  FICOH requests a declaratory judgment, pursuant to HRS § 632-1, that it is not obligated to reinsure the Glens Falls Policy, has no liability for any claims arising under the Glens Falls Policy, and does not owe Continental, Continental Hawaii, or any of their subsidiaries under the Glens Falls Policy.

**ANSWER TO PARAGRAPH 20**:  Denied that FICOH is entitled to any of the relief it seeks.

4872-4029-9104.1

## **AFFIRMATIVE DEFENSES**

Continental asserts the following defenses without assuming the burden of proof on such defenses that would otherwise rest on FICOH:

1.      The Complaint is barred, in whole or in part, by the doctrines of waiver or estoppel insofar as FICOH has previously, and on numerous occasions, acted in conformity with the alleged reinsurance agreement between Continental and FICOH and repeatedly paid claims under that contract.

2.      The dispute between FICOH and Continental is subject in part to a separate agreement to arbitrate under a separate contract between the parties.

3.      The Complaint fails to state a claim on which relief can be granted.

## **RIGHT TO AMEND**

Continental respectfully reserves the right to amend its answer and to raise additional defenses to conform to the evidence to be presented at trial.

**WHEREFORE**, Continental respectfully prays for the following relief:

1.      This Court deny FICOH's claims for declaratory and other relief.

2.      This Court enter judgment in Continental's favor confirming

FICOH must pay the reinsurance billings it owes under the subject reinsurance contract.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Continental, through its attorneys, submits these Counterclaims for breach of contract and declaratory judgment against FICOH and states as follows:

1.      This action involves FICOH's refusal, as a reinsurer, to pay the amounts it owes under a reinsurance agreement between FICOH, as a reinsurer, and Continental, as a ceding company and successor to The Glens Falls Insurance Company.

2.      Continental Insurance Company is a corporation organized under the laws of the State of Pennsylvania, whith its principal place of business at 151 N Franklin Street, Chicago, Illinios 60606, United States

3.      FICOH is a corporation organized under the laws of the State of Hawaii, with its principal place of business at 1100 Ward Avenue, Honolulu, Hawaii 96814, United States.

## FICOH AGREED TO REINSURE THE GLENS FALLS POLICY

4.      One of FICOH's longtime insureds in Hawaii was the Roman Catholic Church of Hawaii ("RCCH").

5. With one exception, FICOH continuously insured RCCH from at least 1951 through 1987.

6. The exception was 1979 to 1982, when Glens Falls Insurance Company ("Glens Falls"), a former Continental subsidiary which has since been merged into Continental, issued to RCCH Policy No. L1294808 (the "Glens Falls Policy," attached hereto as Exhibit A).

7. At the time the Glens Falls Policy was issued, like Glens Falls, FICOH was also a wholly owned subsidiary in the Continental group of companies.[2]

8. Because of the passage of statute-of-limitations reviver statutes in Hawaii, Continental has in recent years incurred claims related to sexual abuse under the Glens Falls Policy.

9. In the course of handling and investigating these claims, Continental learned that FICOH had historically and regularly used Glens Falls and other Continental affiliates to "front" business that FICOH was unable to write. In other words, the Continental entity such as Glens Falls would issue the insurance policy and then transfer or cede 100% of the risk under that policy, pursuant to a

---

[2] FICOH was a wholly owned subsidiary in the Continental group until a 40% stock sale to Tokio Marine in 1988. Tokio Marine purchased an additional 10% of FICOH stock in 1999 and the rest of the company in 2011.

reinsurance agreement, to FICOH. This was and remains a common industry practice, particularly between affiliated insurance entities, and is typically referred to as a 100% reinsurance agreement or a "fronting agreement."

10.     The Glens Falls Policy was subject to such a fronting agreement, with FICOH assuming 100% of the risk under the Policy.

11.     Neither Continental nor FICOH has located any formal written reinsurance contract memorializing this agreement.

12.     Nevertheless, overwhelming evidence shows Glens Falls and FICOH agreed FICOH would reinsure 100 percent of the risk arising from the Glens Falls Policy.

13.     For example, when the RCCH claims were first asserted against the Policy, Continental was unable to locate a copy of the Glens Falls Policy in its files, but was supplied with the policy by FICOH, which had retained it in its policy records even though it was technically not issued as a FICOH policy in FICOH's name.

14.     The Glens Falls Policy appears to have been written on a pre-printed FICOH policy form, with the name of the insurer FICOH simply crossed out of the form in several locations and Glens Falls typed in. (Ex. A .)

15.     Continental has investigated historical claims data pertaining to the Glens Falls Policy. Continental's  records reflect a total of 23 claims under the

11

Glens Falls Policy that preceded the recent abuse claims. (Ex. B, Continental demand letter to FICOH at 3–4.)

16.     Continental's records indicate that each of those 23 historical claims—which were asserted much closer in time to when the Glens Falls Policy was issued than the recent abuse claims—were reinsured 100% by FICOH and that FICOH was billed for, and paid, the full amount of each of the first 23 claims made under the Glens Falls Policy.

17.     Continental's investigation of prior claim activity was not limited to the Glens Falls Policy. Continental also reviewed its claim systems for other policies issued by Glen Falls during the same time period of 1979 to 1982, where the claim system reflected an "accident state" of Hawaii. Accordingly, this search identified claims or accidents connected to Hawaii and thus very likely involving policies issued to insure risks located in Hawaii.[3]

18.     Continental's records show that, for such Glens Falls issued policies with claims reflecting Hawaii as the "accident state," 97% of the more than 2,300 claims were billed 100% to FICOH, meaning FICOH had reinsured the risk under those policies issued by Glens Falls. (Ex. B.)

---

[3] "Accident state" was the best available indicator in Continental's claims system to identify policies issued in Hawaii. That factor is a very strong, but imperfect, proxy for identifying the state where a policy was issued, because claims could be incurred in Hawaii even if the policy had been issued elsewhere..

19.     Continental presented this evidence to FICOH, which demonstrated that FICOH had paid 100% of every single prior claim arising under the Glens Falls Policy, and that Glens Falls had also fronted numerous other policies for FICOH during this same period and that FICOH has also paid 100% of virtually all claims arising under such other policies. Notwithstanding this overwhelming evidence of its agreement to reinsure 100% of the Glens Falls Policy, FICOH categorically refused to acknowledge such evidence, stating only that it would require a copy of a written reinsurance agreement from the late 1970s before it would consider acknowledging its obligations.

20.     Continental has currently paid more than $3.5 million in defense and indemnity under the Glens Falls Policy and expects that figure to grow substantially.

## COUNT I—BREACH OF CONTRACT

21.     Continental incorporates the allegations of paragraphs 1–20 as though fully set forth herein.

22.     FICOH and Glens Falls agreed that FICOH would reinsure 100% of the risk from the Glens Falls Policy.

23.     This agreement to reinsure is a valid and enforceable contract and the evidence Continental has identified proves the material terms.

13

24.     Continental has performed and satisfied its contractual obligations to FICOH by ceding the premium generated by the Glens Falls Policy to FICOH.

25.     FICOH previously accepted, acknowledged, and acted in total conformity with this reinsurance agreement by paying each of the first 23 claims arising under the Glens Falls Policy, which Glens Falls and/or Continental submitted to FICOH for payment.

26.     FICOH has materially breached the reinsurance agreement by refusing to pay Continental's recent billings under the agreement.

27.     As a direct and proximate cause of FICOH's breach, Continental has sustained, and will continue to sustain, damages, including but not limited to additional defense and expense costs Continental will be forced to pay to RCCH, attorneys' fees, pre- and post-judgment interest, and costs.

## COUNT II—DECLARATORY JUDGMENT

28.     Continental incorporates the allegations of paragraphs 1–27 as though fully set forth herein.

29.     As demonstrated by the pre-suit exchanges between Continental and FICOH, as well as FICOH's refusal to pay the billings from Continental, an actual controversy exists regarding the reinsurance agreement between Continental and FICOH.

4872-4029-9104.1

30. Continental has properly billed FICOH under the reinsurance agreement, but FICOH has failed to honor its obligations under the agreement.

31. Under the reinsurance agreement, FICOH agreed to bear financial responsibility for 100% of the risk under the Glens Falls Policy and is therefore responsible for paying Continental's current and future reinsurance billings related to the Glens Falls Policy.

32. A declaration of the parties' rights and obligations under the reinsurance agreement will be useful to the parties, will promote settlement, and is an appropriate exercise of the Court's jurisdiction. *See* 28 U.S.C. § 2201; HRS § 632-1.

WHEREFORE, Continental respectfully prays for the following relief:

1. This Court declare that the reinsurance agreement obligates FICOH to pay for all past, present and future claims made through the Glen Falls Policy.

2. This Court enter judgment in favor of Continental and against FICOH for damages in an amount to be proven at trial, including but not limited to compensatory damages, pre-judgment interest and post-judgment interest.

3. Attorneys' fees and costs.

4. Any other relief the Court deems just and appropriate.

DATED: Honolulu, Hawaiʻi, May 5, 2023.

/s/ Thomas Benedict
THOMAS BENEDICT
DAWN T. SUGIHARA

Attorneys for Defendant
CONTINENTAL INSURANCE
COMPANY

4872-4029-9104.1

# EXHIBIT A

| CO. USE ONLY | PREMIUM AUDIT-BASIS OF ADJUSTMENT | | | Semi-Annually | Quarterly | Monthly |

UNDERWRITING APPROVAL

RECORDED STAMP

INSPECTION

GLENS FALLS INS. CO.    63 ◄ Company Code

Policy No.  L1 29 48 08

M. CAMARA    115 ◄    Producer's Name and Code

Renewal of:
FGA 59923 - CANC.

ROMAN CATHOLIC CHURCH, ETAL
(SEE ENDORSEMENT NO. 1)
1184 BISHOP STREET
HONOLULU, HAWAII 96813

Named Insured and Address ◄

The named insured is:
Individual ☐;  Partnership ☐;  Corporation ☐;
Joint Venture ☐;
Other (specify) ELEEMOSYNARY
Business of the named insured is:

**Item 2.**
Policy Period:  From 12:01 A.M. JUNE 1, 1979  to  JUNE 1, 1982
12:01 A.M., standard time at the address of the named insured as stated herein.

CHURCH, SCHOOL, ETC.

Audit Period:  Annual, unless otherwise stated.

Audit Required
☐ Yes  ☐ No

## LIABILITY INSURANCE POLICY
## DAILY REPORT

**Item 3.** *The insurance afforded is only with respect to such of the following Coverage Parts as are indicated by specific premium charge or charges.*

| Coverage Parts | Advance Premiums |
|---|---|
| Basic Automobile Liability Insurance | $ |
| Comprehensive Automobile Liability Insurance | $ |
| Automobile Medical Payments Insurance | $ |
| Garage Insurance | $ |
| Uninsured Motorists Insurance | $ |
| Automobile Physical Damage Insurance | $ |
| Automobile Physical Damage Insurance (Dealers) | $ |
| | $ |
| | $ |
| | $ |
| Comprehensive General Liability Insurance | $ |
| Owners', Landlords' and Tenants' Liability Insurance | $ 29,196. |
| Manufacturers' and Contractors' Liability Insurance | $ |
| Comprehensive Personal Insurance | $ |
| Farmer's Comprehensive Personal Insurance | $ |
| Contractual Liability Insurance | $ |
| Premises Medical Payments Insurance | $ |
| Owners' and Contractors' Protective Liability Insurance | $ 2,124. |
| Personal Injury Liability Insurance | $ |
| END. #10 | $ 1,451. |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total Advance Premium for this policy** | $ 32,771.00 |

Form numbers of endorsements forming a part of the policy on its effective date: **#1 THRU #13**

Premium is payable: On effective date of policy $                ; 1st Anniversary $                ; 2nd Anniversary $

SO/JF 12-18-79

Countersigned by_____

COPY

**FICOH Maryknoll POD 3646**
CCC 000266

ADDITIONAL PREMIUM: $72.00

AMENDATORY ENDORSEMENT

Endorsement No. ......29..............

THIS ENDORSEMENT MODIFEIS SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

COMPREHENSIVE GENERALLLIAB. INS.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $72.00, IT IS AGREED THAT THE POLICY IS HEREBY EXTENDED TO INCLUDE COVERAGES FOR THE FOLLOWING BAZAARS:

1. ST. ANTHONY'S JUNIOR-SENIOR HIGH SCHOOL OF WAILUKU ANNUAL SPRING BENEFIT BAZAAR TO BE HELD FROM APRIL 23-25, 1982.

2. ST. JOSEPH'S P.T.G. BAZAAR TO BE HELD FROM APRIL 30, 1982 TO MAY 1, 1982.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.

This endorsement is effective as of 12:01 A.M. ......VRS, ....................................., attached to and forming part of policy No. .L12948082............. issued to ..ROMAN CATHOLIC CHURCH, ETAL

by the FXRXXXKXXXXXXXXXXXXXXXXXXXXXXXXXXX GLENS FALLS INS. CO.
Countersigned by: ......

EN/FC  6-2-82

----------------------------------
Authorized Representative

Chairman and President
PRESIDENT

Gen 3514 11/80

**FICOH Maryknoll POD 3647**
CCC 000267

AMENDATORY ENDORSEMENT

IT IS AGREED THAT ENDORSEMENT NO. 1, NAME OF INSURED, IS HEREBY AMENDED TO
INCLUDE THE FOLLOWING:

SISTERS OF THE GOOD SHEPHERD

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agree-
ments or limitations of the undermentioned Policy other than as above stated.

**THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY
WHEN ISSUED.**

This endorsement is effective as of 12:01 A.M. .......... 4-1-82 ...........................................................
and forming part of policy No. ....L1294808......... issued to .ROMAN CATHOLIC CHURCH, ETAL
........................................................................................................................................., attached to

by the ~~FIRST INSURANCE COMPANY OF HAWAII, LTD.~~ GLENS FALLS INS. CO.
Countersigned by:                                                                                  EN/FC 6-2-82

........................................................                    _Chairman and President_
        Authorized Representative                                            PRESIDENT

Gen. 3514 11/80

**FICOH Maryknoll POD 3648**
CCC 000268

ADDITIONAL PREMIUM: $135.00

### AMENDATORY ENDORSEMENT

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

### PREMISES MEDICAL PAYMENTS INS.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $135.00, IT IS AGREED THAT THE LIMITS OF LIABILITY FOR THE PREMISES MEDICAL PAYMENTS COVERAGE PART IS AMENDI TO READ AS FOLLOWS, BUT ONLY WITH RESPECT TO THE FOLLOWING LOCATION:

SACRED HEART CHURCH
85-786 OLD GOV'T. ROAD
WAIANAE, HAWAII (CHURCHES, CODE 31486612)

LIMITS OF LIABILITY

$1,000. EACH PERSON
$10,000. EACH ACCIDENT

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.

This endorsement is effective as of 12:01 A.M.     3-25-82
and forming part of policy No. L 1294808     issued to ROMAN CATHOLIC CHURCH, ETAL   attached to
by the XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX   GLENS FALLS INS. CO.
Countersigned by:

JM/DR   4-1-82

*John R. Moran*
*Chairman and President*

_____
Authorized Representative

Gen. 3514 11/80

**FICOH Maryknoll POD 3649**
CCC 000269

ADDITIONAL PREMIUM: $240.00

## AMENDATORY ENDORSEMENT

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

COMPREHENSIVE GENERAL LIAB. INS.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $240.00, IT IS AGREED THAT THE FOLLOWING CLASSIFICATION IS HEREBY ADDED:

ST. JOHN VIANNEY CHURCH MAY 7 & 8 1982

FAIRS CODE: 31479465S
RECEIPTS: TBD

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

**THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.**

This endorsement is effective as of 12:01 A.M. 2-25-82 .......................... attached to and forming part of policy No. L 1294808 ............ issued to ROMAN CATHOLIC CHURCH, ETAL

by the ~~INSERT XXX XXXXXX XXXXXXX XX XXXXX XXXXX~~ GLENS FALLS INS. CO.

Countersigned by:

JM/DR  4-1-82

-------------------------------------
Authorized Representative

Gen. 3514 11/80

*John R. Moran*
*Chairman and President*

**FICOH Maryknoll POD 3650**
CCC 000270

ADDITIONAL PREMIUM: WAIVED          Endorsement    25.

## AMENDATORY ENDORSEMENT

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE

IN CONSIDERATION OF AN ADDITIONAL PREMIUM WAIVED, IT IS AGREED THAT:

1. THE FOLLOWING LOCATIONS ARE HEREBY ADDED:

   1328 HALA DRIVE, HONOLULU, HAWAII
   2395 AUMAKUA STREET, PEARL CITY, HAWAII
   DWELLINGS: ONE FAMILY
   (LESSOR'S RISK ONLY)
   CODE: 314-65143
   UNITS: 2

2. ENDORSEMENT NO. 6, ADDITIONAL INSURED, (PREMISES LEASED TO THE NAMED INSURED), IS AMENDED TO INCLUDE THE FOLLOWING:

| DESIGNATION OF PREMISES (PART LEASED TO THE NAMED INSURED) | NAME OF PERSON OR ORGANIZATION (ADDITIONAL INSURED) |
|---|---|
| 1328 HALA DRIVE, HONOLULU, HI | MR. GEORGE OKINISHI |
| 2395 AUMAKUA STREET, PEARL CITY, HI | MRS. JUNE MEDEIROS |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

**THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.**

This endorsement is effective as of 12:01 A.M.   1-13-82
and forming part of policy No. L 1294808   issued to ROMAN CATHOLIC CHURCH   attached to

by the XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
Countersigned by:   GLENS FALLS INS. CO.   2-22-82   JM/RK

Authorized Representative

*John R. Moran*
Chairman and President

Gen. 3515  4/75

**FICOH Maryknoll POD 3651**
CCC 000271

## ADDITIONAL INSURED

IT IS AGREED THAT FIRST HAWAIIAN LEASING, INC. IS NAMED AS AN ADDITIONAL INSURED, BUT ONLY WITH RESPECT TO LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE OR USE OF THE TELEPHONE INTERCONNECT SYSTEM LEASED TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

**THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.**

This endorsement is effective as of 12:01 A.M.   8-7-81   ........................attached to
and forming part of policy No.   L 1294808   ........ issued to   ROMAN CATHOLIC CHURCH, ETAL
.................................................................................................................

by the XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX   GLENS FALLS INS. CO.
Countersigned by:

PT/DR   1-4-82

*John R. Moren*
Chairman and President

....................................................
Authorized Representative

Gen. 3514 11/80

**FICOH Maryknoll POD 3652**
CCC 000272

ADDITIONAL INSURED

IT IS AGREED THAT AMERICAL FUNDING CO., INC. IS NAMED AS AN ADDITIONAL
INSURED, BUT ONLY WITH RESPECT TO LIABILITY ARISING OUT OF OWNERSHIP,
MAINTENANCE OR USE OF THE SHARPFAX PLAIN PAPER COPIER MODEL SF-811, 16558578,
LEASED TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

**THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY
WHEN ISSUED.**

This endorsement is effective as of 12:01 A.M. ____11-30-81____ ................................ attached to
and forming part of policy No. L 1294808 .................... issued to ROMAN CATHOLIC CHURCH, ETAL

by the XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX   GLENS FALLS INS. CO.
Countersigned by:

PT/DR   1-4-82

_John R. Moran_
_Chairman and President_

.................................................
Authorized Representative

Gen. 3514 11/80

**FICOH Maryknoll POD 3653**
CCC 000273

ACCOUNT OF: ROMAN CATHOLIC CHURCH IN THE
            STATE OF HAWAII
ADDITIONAL PREMIUM: $44.00

Endorsement No. ....**17**........

## AMENDMENT ENDORSEMENT

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS
OF THE POLICY RELATING TO THE FOLLOWING:

            COMPREHENSIVE GENERAL LIAB. INS.

IT IS AGREED THAT THE FOLLOWING CLASSIFICATION IS HEREBY ADDED:

            5-2, 3, 1980
            IMMACULATE CONCEPCION CHURCH
            LIHUE, HAWAII


            CARNIVAL CODE 79412S

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.

This endorsement is effective as of 12:01 A.M.  **5-2-80**  ............................ attached to
and forming part of policy No. 1 29 48 08  ............ issued to  **ROMAN CATHOLIC CHURCH, ETAL**

by the FIRST INSURANCE COMPANY OF HAWAII, LTD.  **GLENS FALLS INS. CO.**
Countersigned by:

            **LA/FG**

.................................................
        Authorized Representative

Gen. 3514 4/75

*R L Stevenson*

*Chairman and President*

**FICOH Maryknoll POD 3654**
CCC 000274

ACCOUNT OF: ROMAN CATHO' C CHURCH IN THE STATE OF H 'AII

ADDITIONAL PREMIUM: $178.00

Endorsement No. ___16___

## AMENDMENT ENDORSEMENT

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

COMPREHENSIVE GENERAL LIAB. INS.

IT IS AGREED THAT THE FOLLOWING CLASSIFICATION IS HEREBY ADDED:

5-2, 3 & 4, 1980
FAIR-ST. JOSEPH CHURCH
MAKAWAO, HAWAII

FAIR CODE 79465S

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.

This endorsement is effective as of 12:01 A.M. **5-2-80** attached to and forming part of policy No. __L1 29 48 08__ ................ issued to __ROMAN CATHOLIC CHURCH, ETAL__

by the ~~FIRST INSURANCE COMPANY OF HAWAII, LTD~~ GLENS FALLS INS. CO.
Countersigned by:

LA/FG  5-10-80

.................................................
Authorized Representative

Gen. 3514 4/75

*R L Stevenson*

*Chairman and President*

**FICOH Maryknoll POD 3655**
CCC 000275

ADDITIONAL PREMIUM: $28.00 (FLAT)
ACCOUNT OF: ROMAN CATHOLIC CHURCH IN THE
STATE OF HAWAII

Endorsement No. ...... 15

### AMENDMENT ENDORSEMENT

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

COMPREHENSIVE GENERAL LIAB. INS.

IT IS AGREED THAT THE FOLLOWING CLASSIFICATION IS HEREBY ADDED:

2-2480-NEAL BLAISDELL CONCERT HALL, HONOLULU, HAWAII

ECUMENICAL PRAYER SERVICE RATED AS SOCIAL GATHERING
CODE 791115

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.

This endorsement is effective as of 12:01 A.M. **2-12-80**
and forming part of policy No. **LI 29 48 08** ........... issued to **ROMAN CATHOLIC CHURCH, ETAL** attached to

by the ~~FIRST INSURANCE COMPANY OF HAWAII, LTD.~~ **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX GLENS FALLS INS. CO.**
Countersigned by:

LA/FG   6-10-80

........................................
Authorized Representative

Gen. 3514 4/75

*R L Stevenson*

Chairman and President

**FICOH Maryknoll POD 3656**
CCC 000276

This endorsement forms a part of the designated policy and applies, unless otherwise stated herein, as of the effective time and date of such policy.

END. #14

Issued By: **GLENS FALLS INS. CO.** 63

Policy No.
L 1294808

Producer's Name and Address

Producer's Code

Effective
**VARIOUS** 19___ at___ M.

Named Insured and Address (Number and Street, Town or City, County and State)

**ROMAN CATHOLIC CHURCH, ETAL**

ON ACCOUNT OF THE FOLLOWING THE
ADDITIONAL PREMIUM IS $ 65.00
RETURN PREMIUM IS $

## AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:**

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

**IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $65.00, IT IS AGREED THAT:**

1.  THE FOLLOWING PREMISES-OPERATIONS CLASSIFICATION ARE HEREBY ADDED:

    EFF. 8-31-79
    CARNIVAL AT SACRED HEART CHURCH IN PAHOA, HAWAII
    ON AUG. 31, SEPT. 1 & 2, 1979

    CARNIVALS - OUTSIDE (SPONSOR'S RISK ONLY)  CODE 79412S
    RECEIPTS: $ 4,000.00

2.  EFF. 9-22-79
    CARNIVAL AT ST. THERESA IN KEKAHA, KAUAI ON SEPT. 22, 1979

    CARNIVALS - OUTSIDE - (SPONSOR'S RISK ONLY)  CODE 79421S
    RECEIPTS: $13,600.00

2.  WITH RESPECT TO THE OPERATIONS OF ANY CARNIVAL OR CIRCUS, THE INSURANCE DOES NOT APPLY:

    A)  TO BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF ANY MECHANICALLY OPERATED AMUSEMENT DEVICE OR

    B)  TO BODILY INJURY TO ANY PERSON WHILE PRACTICING FOR OR PARTICIPATING IN ANY CONTEST OR EXHIBITION OF ANY ATHLETIC OR SPORTS NATURE SPONSORED BY THE NAMED INSURED.

SO/JF 12-18-79

This endorsement shall not be binding upon the company unless countersigned by a duly authorized representative of the company.

Countersigned by_____

LIAB 7251
C-P

PRINTED IN U.S

**FICOH Maryknoll POD 3657**
CCC 000277

## EXPERIENCE MODIFICATION

IT IS AGREED THAT THE PREMIUMS OR RATES FOR HAZARDS DESCRIBED IN THE

- [ ] COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- [ ] AUTOMOBILE PHYSICAL DAMAGE INSURANCE
- [ ] GARAGE INSURANCE
- [ ] STANDARD COMBINED AUTOMOBILE POLICY
- [X] COMPREHENSIVE GENERAL LIABILITY INSURANCE
- [ ] MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
- [ ] OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
- [X] PREMISES MEDICAL PAYMENTS INSURANCE
- [ ] PERSONAL INJURY LIABILITY INSURANCE
- [ ] CONTRACTUAL LIABILITY INSURANCE
- [ ] WORKERS' COMPENSATION INSURANCE

REVISED

MAY BE SUBJECT TO EXPERIENCE MODIFICATION NOT AVAILABLE AT THE TIME OF POLICY ISSUANCE. SUCH EXPERIENCE MODIFICATION OR RATES, WHEN DETERMINED, WILL BE STATED IN AN ENDORSEMENT ISSUED TO FORM A PART OF THE POLICY AND ADJUSTMENT WILL BE MADE ACCORDINGLY.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

**THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.**

This endorsement is effective as of 12:01 A.M., ......................................................................, attached to and forming part of policy No. ..................... ................ issued to ......................................................... ................................................................................................................................................................

by the XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXGLENS FALLS INS. CO.
Countersigned by:

.................................................... ..... ...............
Authorized Representative

*R. P. Stevenson*
Chairman and President

CAS. END. FORM 34 (3-79)

Gen. 3515 4/75

**FICOH Maryknoll POD 3658**
CCC 000278

LIABILITY

(The Attaching Clause need be comp   only when this endorsement is issued subsequent to prepara  f the policy.)

G 610

**PRODUCTS HAZARD EXCEPTIONS**   **END. #12**

L 9193
(Ed. 7-66)

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE

OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

This endorsement, effective

(12:01 A. M., standard time)          , forms a part of policy No.

issued to

by

Authorized Representative

Description of Premises and Operations:

CHURCHES - INCL. COMPLETED OPERATIONS
SCHOOLS - PAROCHIAL OR PRIVATE
HOMES FOR THE AGED - INCL. COMPLETED OPERATIONS

CODE 86612S
82111S
80921S

It is agreed that the products hazard does not include bodily injury or property damage arising out of the named insured's products manufactured, sold, handled or distributed in connection with (1) the use of any premises described in this endorsement, owned by or rented to the named insured or (2) any operation, described in this endorsement, conducted by or on behalf of the named insured.

AUTHENTIC

FICOH Maryknoll POD 3659
CCC 000279

LIABILITY

G 314

L 9151
(Ed. 7-66)

**EXCLUSION**

(Malpractice and Professional Services)

(Form A)

**END. #11**

| This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: |
| --- |
| COMPREHENSIVE GENERAL LIABILITY INSURANCE |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE |

This endorsement, effective

(12:01 A. M., standard time)

, forms a part of policy No.

issued to

by

................................................................................................
Authorized Representative

Description of Operations:

HOMES FOR THE AGED - INCL. COMPLETED OPERATIONS    CODE 80921S

It is agreed that with respect to any operation described above or designated in the policy as subject to this endorsement, the insurance does not apply to **bodily injury** or **property damage** due to

1. the rendering of or failure to render
    (a) medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;
    (b) any service or treatment conducive to health or of a professional nature; or
    (c) any cosmetic or tonsorial service or treatment;
2. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or
3. the handling of or performing of autopsies on dead bodies.

[AUTHENTIC]

**FICOH Maryknoll POD 3660**

CCC 000280

This endorsement forms a part of the designated policy and applies, unless otherwise stated herein, as of the effective time and date of such policy.

**END. #10**

| | |
|---|---|
| Issued By | |

Policy No.

| | |
|---|---|
| Producer's Name and Address | Producer's Code |

Effective _____ 19___ at ___ ___.M.

Named Insured and Address (Number and Street, Town or City, County and State)

ON ACCOUNT OF THE FOLLOWING THE
ADDITIONAL PREMIUM IS $ **1,451.00**
RETURN PREMIUM IS $ _____

## ADDITIONAL INSURED - EMPLOYEES AND VOLUNTEERS

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

IT IS AGREED THAT THE "PERSONS INSURED" PROVISION IS AMENDED TO INCLUDE ANY EMPLOYEE AND VOLUNTEER OF THE NAMED INSURED WHILE ACTING WITHIN THE SCOPE OF HIS DUTIES AS SUCH, BUT THE INSURANCE AFFORDED TO SUCH EMPLOYEE AND VOLUNTEER DOES NOT APPLY:

1. TO BODILY INJURY TO (A) ANOTHER EMPLOYEE OR VOLUNTEER OF THE NAMED INSURED ARISING OUT OF OR IN THE COURSE OF HIS EMPLOYMENT OR SERVICES, OR (B) THE NAMED INSURED OR, IF THE NAMED INSURED IS A PARTNERSHIP OR JOINT VENTURE, ANY PARTNER OR MEMBER THEREOF;

2. TO PROPERTY DAMAGE TO PROPERTY OWNED, OCCUPIED OR USED BY, RENTED TO, IN THE CARE, CUSTODY OR CONTROL OF, OR OVER WHICH PHYSICAL CONTROL IS BEING EXERCISED FOR ANY PURPOSES BY (A) ANOTHER EMPLOYEE OR VOLUNTEER OF THE NAMED INSURED OR (B) THE NAMED INSURED, OR, IF THE NAMED INSURED IS A PARTNERSHIP OR JOINT VENTURE, ANY PARTNER OR MEMBER THEREOF.

IT IS FURTHER AGREED THAT THE PREMIUMS FOR THIS ENDORSEMENT SHALL BE PAYABLE AS FOLLOWS:

| | B.I. | P.D. | | |
|---|---|---|---|---|
| DEPOSIT | 478. | $5. | + = $ | 483. |
| 2ND INSTALLMENT – 6-1-80 | 478. | 5. | + = | 483. |
| 3RD INSTALLMENT – 6-1-81 | 479. | 6. | + = | 485. |
| | | | | $1,451.00 |

FOR THE PURPOSE OF THIS ENDORSEMENT, IT IS ALSO AGREED THAT THE WORD "EMPLOYEE" SHALL INCLUDE MEMBERS OF THE CLERGY AND OTHER NON-LAY MEMBERS OF THE CHURCH.

This endorsement shall not be binding upon the company unless countersigned by a duly authorized representative of the company.

Countersigned by_____

L-IAB 7251
C–P

PRINTED IN U.S.A.

**FICOH Maryknoll POD 3661**
CCC 000281

This endorsement forms a part of the designated policy and applies, unless otherwise stated herein, as of the effective time and date of such policy.

| Issued By | | | END. #9 | Policy No. |
| --- | --- | --- | --- | --- |

| Producer's Name and Address | | Producer's Code | Effective _____ 19___ at ___ Hour and Minute ___M. |
| --- | --- | --- | --- |

Named Insured and Address (Number and Street, Town or City, County and State)

ON ACCOUNT OF THE FOLLOWING THE
ADDITIONAL PREMIUM IS $ _____
RETURN PREMIUM IS $ _____

## AMENDMENT ENDORSEMENT

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

PREMISES MEDICAL PAYMENTS INSURANCE

IT IS UNDERSTOOD AND AGREED THAT THE EXCLUSION (C) (3) IS AMENDED TO READ:

TO ANY PERSON OTHER THAN VOLUNTEER HELP WHILE ENGAGED IN MAINTENANCE AND REPAIR OF THE INSURED'S PREMISES OR ALTERATION, DEMOLITION OR NEW CONSTRUCTION AT SUCH PREMISES.

This endorsement shall not be binding upon the company unless countersigned by a duly authorized representative of the company.

Countersigned by _____

LIAB 7251
C-P

FICOH Maryknoll POD 3662
CCC 000282

(The Attaching Clause need be comp.___ only when this endorsement is issued subsequent to prepar___ of the policy.)

LIABILITY

GL 20 11 (Ed. 07 66)
G 109

L 9109
(Ed. 7-66)

## ADDITIONAL INSURED
(Premises Leased to the Named Insured)     END. #8

| This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: |
|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE |
| STOREKEEPER'S INSURANCE |

This endorsement, effective _____, forms a part of policy No. _____
                          (12:01 A. M., standard time)

issued to

by

.........................................................
Authorized Representative

### SCHEDULE

| Premiums | | Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) |
|---|---|---|---|
| Bodily Injury Liability | Property Damage Liability | | |
| NO CHARGE | | LOTS 116 & 117 PUAKO BEACH LOTS & PARCEL 4 OF PUAKO BEACH RD., REALIGNMENT LALAMILO, WAIMEA, SO. KOHALA, HI T.K.POR. 6-905-19 | STATE OF HAWAII, DEPT. OF LAND & NATURAL RESOURCES |

The following additional exclusions:

The insurance does not apply:

1. to any **occurrence** which takes place after the named insured ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated above.



**FICOH Maryknoll POD 3663**
CCC 000283

(The Attaching Clause need be comp.   only when this endorsement is issued  subsequent to prepar.   of the policy.)

LIABILITY

GL 20 11 (Ed. 07 66)
G 109

ADDITIONAL INSURED
(Premises Leased to the Named Insured)    END. #7

L 9109
(Ed. 7-66)

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
>
> **COMPREHENSIVE GENERAL LIABILITY INSURANCE**
> **MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**
> **OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**
> **STOREKEEPER'S INSURANCE**

This endorsement, effective

(12:01 A. M., standard time)                      , forms a part of policy No.

issued to

by

....................................................................... .........................................
Authorized Representative

### SCHEDULE

| Premiums | | Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) |
|---|---|---|---|
| Bodily Injury Liability | Property Damage Liability | | |
| NO CHARGE | | KALEPANA, MANUKEA, HI T.K. 1-2-03-14 | THE HAWAII CONFERENCE FOUNDATION |

It is agreed that the "Persons Insured" provision is amended to include as an **insured** the person or organization designated above, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated above leased to the **named insured**, and subject to the following additional exclusions:

The insurance does not apply:

1. to any **occurrence** which takes place after the **named insured** ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated above.



**FICOH Maryknoll POD 3664**
CCC 000284

(The Attaching Clause need be comp    only when this endorsement is issued subsequent to prepar    of the policy.)

**LIABILITY**

GL 20 11 (Ed. 07 66)
G 109
**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

L 9109
(Ed. 7-66)

**END. #6**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**
**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**
**STOREKEEPER'S INSURANCE**

This endorsement, effective        (12:01 A. M., standard time)      , forms a part of policy No.

issued to

by

                                    Authorized Representative

**SCHEDULE**

| Premiums | | Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) |
|---|---|---|---|
| Bodily Injury Liability | Property Damage Liability | | |
| NO CHARGE | | ST. PHILOMENA CHURCH ALA LAULANI & ALA ILIMA STS. & SALT LAKE BLVD. | MIDPAC DEVELOPMENT, INC. |

It is agreed that the "Persons Insured" provision is amended to include as an **insured** the person or organization designated above, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated above leased to the **named insured**, and subject to the following additional exclusions:

The insurance does not apply:

1. to any **occurrence** which takes place after the **named insured** ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated above.



**FICOH Maryknoll POD 3665**
CCC 000285

DELETION OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
STOREKEEPER'S INSURANCE

It is agreed that Exclusion (H) is deleted from the policy.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

**THE FOLLOWING SPACES NEED NOT BE COMPLETED IF THIS ENDORSEMENT IS ATTACHED TO THE POLICY WHEN ISSUED.**

This endorsement is effective as of 12:01 A.M., ............................................................................., attached to and forming part of policy No. ......................................... issued to .....................................................................

by the XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX GLENS FALLS INS. CO.
Countersigned by:

*R.C. Stevenson*

.................................................................

*Chairman and President*

Authorized Representative

Gen. 3514  4/75     Cas. Gen. Form 31 (8-77)

**FICOH Maryknoll POD 3666**
CCC 000286

This endorsement forms a part of the designated policy and applies, unless otherwise stated herein, as of the effective time and date of such policy.

**END. #4**

| Issued By | | Policy No. |
|---|---|---|

| Producer's Name and Address | Producer's Code | Effective _____,19__ at____M. |
|---|---|---|

Named Insured and Address (Number and Street, Town or City, County and State)

ON ACCOUNT OF THE FOLLOWING THE

ADDITIONAL PREMIUM IS $_____

RETURN PREMIUM IS $_____

## EXCLUSION OF SPECIFIED LOCATION

IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THE POLICY SHALL NOT APPLY TO THE FOLLOWING LOCATION:

3559, 3561, 3562 & 3565 WAIALAE AVENUE
HONOLULU, HAWAII T.K. 3-2-06-33

This endorsement shall not be binding upon the company unless countersigned by a duly authorized representative of the company.

Countersigned by_____

LIAB 7251
C–P

PRINTED IN U.S.A.

**FICOH Maryknoll POD 3667**
CCC 000287

(The Attaching Clause need be complet    nly when this endorsement is issued subsequent to pre    on of the policy.)

G 604

**DEDUCTIBLE LIABILITY INSURANCE**

L 9294
(Ed. 1-73)

**END. #3**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**

**OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE**

**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**

This endorsement, effective

(12:01 A. M., standard time)                    , forms a part of policy No.

issued to

by

................................................
Authorized Representative

**SCHEDULE**

| Amount and Basis of Deductible | | Coverage |
|---|---|---|
| $ —            per claim | | Bodily Injury Liability |
| $ —            per occurrence | | |
| $ —            per claim | | Property Damage Liability |
| $ 500.00       per occurrence | | |

**APPLICATION OF ENDORSEMENT** (Enter here any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to all loss however caused):—

It is agreed that:

1. The company's obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on behalf of the **insured** applies only to the amount of damages in excess of any deductible amounts stated in the schedule above as applicable to such coverages.

2. The deductible amounts stated in the schedule apply as follows:

   (a) **PER CLAIM BASIS**—If the deductible is on a "per claim" basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of **bodily injury** sustained by one person, or to all **property damage** sustained by one person or organization, as the result of any one **occurrence**.

   (b) **PER OCCURRENCE BASIS**—If the deductible is on a "per occurrence" basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of all **bodily injury** or **property damage** as the result of any one **occurrence**.

3. The terms of the policy, including those with respect to (a) the company's rights and duties with respect to the defense of suits and (b) the **insured's** duties in the event of an **occurrence** apply irrespective of the application of the deductible amount.

4. The company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the named insured shall promptly reimburse the company for such part of the deductible amount as has been paid by the company.

**FICOH Maryknoll POD 3668**

CCC 000288

(The Attaching Clause need be comp    t only when this endorsement is issued subsequent to prepara    of the policy.)

**LIABILITY**

G404
ISO G404
**COLLEGES OR SCHOOLS**          END. #2

L 9467a
(Ed. 1-74)

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**

---

This endorsement, effective

(12:01 A. M., standard time)                    , forms a part of policy No.

issued to

by

......................................................................................
Authorized Representative

**SCHEDULE**

Additional Insureds:
☐ Including Teachers and Staff
First Aid Coverage:
**XX** 1. Excluding All Students
☐ 2. Including All Students

It is agreed that with respect to the operation of any college or school by or on behalf of the named insured:

1. **Additional Insureds:** The "Persons Insured" provision is amended to include as an **insured** any of the following while acting within the scope of his duties as such:

   (a) If the **named insured** is a private, charitable or educational institution, any trustee or member of the Board of Governors thereof,

   (b) If the **named insured** is a public board or commission, any executive officer or member thereof,

   (c) If an "x" is entered in the schedule in the block opposite "Including Teachers and Staff", any member of the teaching or administrative staff or other employee of the **named insured**.

2. **First Aid:** The insurance under the "Supplementary Payments" provision for first aid is subject to the following special provisions:

   (a) If an "x" is entered in the schedule in the block opposite "Excluding All Students", the insurance does not apply to first aid to any student or pupil.

   (b) Subject to paragraph 2 (a), unless an "x" is entered in the block opposite "Including All Students" the insurance does not apply to first aid to any student or pupil injured while engaged in any athletic activities (including calisthenic drills and gymnasium classes) directed or organized by any **insured** or by any person acting on behalf of the **named insured**.

   (c) The insurance does not apply to expenses for services provided by the **named insured** or his employees or by any person or organization under contract with the named insured to provide such services.

3. **Infirmaries, Clinics, Hospitals:** If the college or school has an infirmary with facilities for lodging and treatment or a public clinic or hospital, the insurance does not apply to (1) the rendering of or failure to render (a) medical, surgical, dental, X-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith, (b) any service or treatment conducive to health or of a professional nature, or (c) any cosmetic or tonsorial service or treatment; (2) the furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or (3) the handling of or performing of autopsies on dead bodies.

4. **Transportation of Pupils:** With respect to the transportation of students or pupils, exclusions (b) and (e) of the policy are replaced by the following:

   The insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft, **automobile** or watercraft owned, operated or hired by or for the **insured** or any officer, employee or member of the teaching supervisory or administrative staff thereof. For the purpose of this exclusion the word "hired" shall be deemed to include any contract to furnish transportation of pupils to and from schools.



**FICOH Maryknoll POD 3669**
CCC 000289

This endorsement forms a part of the designated policy and applies, unless otherwise stated herein, as of the effective time and date of such policy.

Issued By

END. #1    Policy No.

Producer's Name and Address

Producer's Code

Effective _____ ,19___ at _____ M.
Hour and Minute

Named Insured and Address (Number and Street, Town or City, County and State)

ON ACCOUNT OF THE FOLLOWING THE
ADDITIONAL PREMIUM IS $_____
RETURN PREMIUM IS $_____

## NAME OF INSURED

**IT IS AGREED THAT THE NAME OF INSURED IS AMENDED TO READ:**

ROMAN CATHOLIC CHURCH IN THE STATE OF HAWAII
ROMAN CATHOLIC BISHOP OF HONOLULU, A CORPORATION SOLE
CATHOLIC FOREIGN MISSION SOCIETY OF AMERICA, INC.
THE CHRISTIAN BROTHERS OF IRELAND
MARYKNOLL FATHERS-M.M.
MARIST FATHERS-S.M.
SOCIETY OF MARY (MARINIST)
SULPICIAN FATHERS-S.S.
FATHERS OF THE SACRED HEARTS-SS.CC.
SISTERS OF CHARITY OF THE BLESSED VIRGIN MARY-B.V.M.
FOREIGN MISSION SISTERS OF ST. DOMINIC, INC.-O.P. (MARYKNOLL SISTERS)
FRANCISCAN SISTERS OF CHRISTIAN CHARITY-O.S.F.
FRANCISCAN SISTERS OF THE THIRD ORDER-O.S.F.
SISTERS OF THE HOLY FAMILY-S.H.F.
MISSIONARY SISTERS OF THE SOCIETY OF MARY-S.M.S.M.
SISTERS OF NOTRE DAME-S.N.D.
SISTERS OF THE SACRED HEARTS & OF PERPETUAL ADORATION-SS.CC.
SISTERS OF ST. JOSEPH OF CORONDELET-C.S.J.
SISTERS OF ST. JOSEPH OF ORANGE-C.S.J.
IRISH CHRISTIAN BROTHERS OF IRELAND
THE SOCIETY OF JESUS
DAMIEN MEMORIAL HIGH SCHOOL CONGREGATION OF CHRISTIAN BROTHERS
  OF HAWAII, INC.
CATHOLIC CHARITIES OF THE DIOCESE OF HONOLULU

This endorsement shall not be binding upon the company unless countersigned by a duly authorized representative of the company.

Countersigned by_____

LIAB 7251
C-P

PRINTED IN U.S.A.

**FICOH Maryknoll POD 3670**
CCC 000290

COMPREHENSIVE GENERAL LIABILITY INSURANCE

L 6395a
(Ed. 1-73)

For attachment to Policy No. **L 1294808** , to complete said policy.

ADDITIONAL DECLARATIONS

Location of all premises owned by, rented to or controlled by the named insured (ENTER "SAME" IF SAME LOCATION AS ADDRESS SHOWN IN ITEM 1 OF DECLARATIONS)

Interest of named insured in such premises (CHECK BELOW):

☐ Owner ☐ General Lessee ☐ Tenant ☐ Other _____

Part occupied by named insured (ENTER BELOW)

The following discloses all hazards insured hereunder known to exist at the effective date of this policy, unless otherwise stated herein.

SCHEDULE

The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Limits of Liability | | Advance Premiums |
|---|---|---|---|
| | each occurrence | aggregate | |
| A—Bodily Injury Liability | $ 1,000,000. | $1,000,000. | $ 28,844. |
| B—Property Damage Liability    SEE END. #3 | $ 50,000. | $ 50,000. | 352. |
| Form numbers of endorsements attached at issue | | | $ |
| | | Total Advance Premium | $ 29,196.00 |

General Liability Hazards

| Description of Hazards | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | Bodily Injury | Property Damage |
| Premises - Operations | | | | | | |
| 1. CHURCHES | 86612S | A)613,333 | 2.997 | .013 | 18,382. | 80. |
| ADDITIONAL RESIDENCE OCCUPIED BY CLERGY | | | | | NO CHARGE | |
| 2. CONVENTS | 86611 | A)305,321 | .652 | .018 | 1,991. | 55. |
| 3. SCHOOLS | 82111S | E) 15,084 | .511 | .008 | 7,708. | 121. |
| 4. DWELLINGS - ONE FAMILY (LESSOR'S RISK ONLY) | 65143 | E) 25 | 5.323 | .836 | 133. | 21. |
| 5. BUSINESS PROPERTY | 65132 | A) 5,568 | 1.700 | .042 | 95. | 17. M.P. |
| | 65198 | A) 20,516 | 1.511 | .027 | 310. | 17. M.P. |
| 6. HOMES FOR THE AGED - INCL. COMPLETED OPERATIONS | 80921S | A) 5,372 | 1.340 | .023 | 72. | 17. M.P. |
| EXCESS LIMITS CHARGE | | | | | 105. | |

(a) Area (Sq. Ft.)  (a) Per 100 Sq. Ft. of Area
(b) Frontage  (b) Per Linear Foot
(c) Remuneration  (c) Per $100 of Remuneration
(d) Receipts  (d) Per $100 of Receipts
(e) Units  (e) Per Unit
(f) Admissions  (f) Per 100 Admissions

| Escalators (Number at Premises) | Number Insured | Per Landing |
|---|---|---|
| NONE AT INCEPTION | | |

| Independent Contractors | Cost | Per $100 of Cost | | |
|---|---|---|---|---|
| CONSTRUCTION OPERATIONS - OWNERS | 16292 | 160,000. | .030 | .015 | 48. | 24. |

| Completed Operations | (a) Receipts | (a) Per $1,000 of Receipts |
|---|---|---|
| NOT COVERED EXCEPT UNDER PREMISES-OPERATIONS CODE 80921S | | |

| Products | (b) Sales | (b) Per $1,000 of Sales |
|---|---|---|
| NOT COVERED EXCEPT UNDER PREMISES-OPERATIONS CODE 80921S | | |

Total Advance B.I. and P.D. Premiums $ 28,844. $ 352.

When used as a premium basis:

1. "admissions" means the total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

2. "cost" means the total cost to the named insured with respect to operations performed for the named insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

3. "receipts" means the gross amount of money charged by the named insured for such operations by the named insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

4. "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the named insured, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;

5. "sales" means the gross amount of money charged by the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the named insured and such others collect as a separate item and remit directly to a governmental division.

(over)

**FICOH Maryknoll POD 3671**
CCC 000291

For attachment to Policy No. **L 1294808** , to complete said policy.

## SCHEDULE

The insurance afforded is only with respect to the following Coverage indicated by specific premium charge or charges. The limit of the company's liability against such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Limits of Liability | | Advance Premiums |
|---|---|---|---|
| E—Premises Medical Payments | 250. dollars each person | 10,000. dollars each accident | X  X  X |
| (a) Premises and operations | | | $ |
| (b) Escalators | | | $ |
| (c) Sports activities | | | $ |
| Form numbers of endorsements attached at issue CODES 86612S $1,342.; 86611 $169.; 82111S/ | | | $ |
| $563.; 65143 $11.; 65132 $8.; 65198 $26.; 30921S $5. | | Total Advance Premium $ 2,124.00 |

## I. COVERAGE E—PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains **bodily injury** caused by accident at such reasonable **medical expense** incurred within one year from the date of the accident on account of such **bodily injury**, provided such **bodily injury** arises out of (a) a condition in the **insured premises** or (b) operations with respect to which the **named insured** is afforded coverage for **bodily injury** liability under this policy.

### Exclusions

This insurance does not apply:

(a) to **bodily injury**

(1) arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any **automobile** or aircraft owned or operated by or rented or loaned to any insured, or

(ii) any other **automobile** or aircraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to the parking of an **automobile** on the **insured premises**, if such automobile is not owned by or rented or loaned to any insured;

(2) arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any **mobile equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

(3) arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any watercraft owned or operated by or rented or loaned to any **insured**, or

(ii) any other watercraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to watercraft while ashore on the **insured premises**; or

(4) arising out of and in the course of the transportation of **mobile equipment** by an **automobile** owned or operated by or rented or loaned to any insured;

(b) to **bodily injury**

(1) included within the **completed operations hazard** or the **products hazard**;

(2) arising out of operations performed for the named insured by independent contractors other than (i) maintenance and repair of the **insured premises** or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the named insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the named insured is such an owner or lessor;

(4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to **bodily injury**

(1) to the **named insured**, any partner therein, any tenant or other person regularly residing in the **insured premises** or any employee of any of the

foregoing if the bodily injury arises out of and in the course of his employment therewith;

(2) to any other tenant if the **bodily injury** occurs on that part of the **insured premises** rented from the named insured or to any employee of such a tenant if the **bodily injury** occurs on the tenant's part of the **insured premises** and arises out of and in the course of his employment for the tenant;

(3) to any person while engaged in maintenance and repair of the **insured premises** or alteration, demolition or new construction at such premises;

(4) to any person if any benefits for such **bodily injury** are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sport activities in the policy with respect to Premises Medical Payments Coverage;

(d) to any **medical expense** for services by the **named insured**, any employee thereof or any person or organization under contract to the **named insured** to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all **medical expense** for **bodily injury** to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all **medical expense** for **bodily injury** to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"**insured premises**" means all premises owned by or rented to the **named insured** with respect to which the **named insured** is afforded coverage for **bodily injury** liability under this policy, and includes the buildings immediately adjoining on land;

"**medical expense**" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.



**FICOH Maryknoll POD 3675**

CCC 000292

# EXHIBIT B



151 N. Franklin Street, Chicago Illinois 60606

***Kristy L. Allen***
*VP, Reinsurance Contracts, Claims, and Corporate Insurance*
*Telephone: (312) 822-1915*
*Email: kristy.allen@cna.com*

May 4, 2021

**Via E-Mail:** Jeffrey.Grimmer@ficoh.com

Jeffrey Grimmer
Vice President and Treasurer
First Insurance Company of Hawaii
1100 Ward Avenue
Honolulu, HI  96814

      Re:     Glens Falls Policy No: L1294808

Dear Mr. Grimmer:

I am writing to request a meeting with FICOH to discuss responsibility for loss and expense paid under Glens Falls Policy No. L1294808 issued to Roman Catholic Church Hawaii ("RCC Hawaii"), a copy of which is attached as Exhibit 1 (the "Glens Falls Policy" or "Policy").  Based on our investigation into the financial records related to the Glens Falls Policy, we have discovered at least 23 historic claims with a ceded record to First Insurance Company of Hawaii ("FICOH"), supporting the conclusion that this Policy is subject to a reinsurance arrangement whereby 100 percent of loss and expense is ceded to FICOH.   Moreover, as evidenced in other accounts involving Glens Falls policies issued during the same time period, the insurers had a pattern and practice whereby Continental fronted policies written on Glens Falls paper and FICOH reinsured 100% of all loss and expense paid under these policies.   While this letter provides you with an explanation and the backup data in support of CNA's conclusions, I suggest a meeting so we may walk through our analysis with you, answer any of your questions, and discuss next steps.

As you are aware, with the exception of the 1979 to 1982 Glens Falls Policy period, FICOH has acknowledged continuously insuring RCC Hawaii from 1951 to 1987.   FICOH and CNA are now involved in a number of lawsuits against this insured.   CNA requests consideration by FICOH to direct handle the pending lawsuits which would enable FICOH to control financial decisions related to the Glens Falls Policy and avoid allocation disputes between the companies.

**Glens Falls Insurance Company**

The Continental Insurance Company ("CIC") is the successor in interest to certain policies issued by Glens Falls Insurance Company, including Policy No. L 1294808 issued to Roman Catholic Church in the State of Hawaii. The Glens Falls Policy had effective dates of June 1, 1979 to June 1, 1982. With the exception of the Glens Falls Policy period, FICOH issued continuous coverage to this insured from 1951 to 1987. When the Glens Falls Policy was issued, Glens Falls and FICOH were affiliated companies.

In 1995, CIC merged with CNA. Since the merger, all underwriting companies, including CIC, use the CNA service mark. When not referring to a specific CNA underwriting company, I will simply refer to CNA.

**Tenders to CNA**

CNA received 16 tenders from insureds under the Glens Falls Policy seeking defense and indemnity for sexual abuse claims filed in Hawaii. Three of these claims (Roe 101, Roe 108, and Tavita Brothers) resolved, with CNA paying $1,038,500, and FICOH also paying an allocated share. Three other claims (Ron Roe 1, CD, and Roe 103) were either voluntarily dismissed or denied. Ten claims are pending, of which six were also tendered to FICOH. The claims are: (1) JS; (2) DS, (3) Roe 128, (4) Roe 124, (5) Jane Roe 130, and (6) Roe 92.

When the claims were initially tendered to CNA, CNA was unable to locate a copy of the Glens Falls Policy. But in 2018, Jeffrey Shonka (FICOH) sent Larry Boysen (CNA) a copy of the Glens Falls Policy located in FICOH's files, and spoke to Mr. Boysen about the Policy. Mr. Boysen then sent the Glens Falls Policy to CNA Claims personnel responsible for handling abuse matters. In that email, Mr. Boysen stated:

> As you know, from time-to-time FICOH used Glens Falls to front business that FICOH couldn't write under their license. That clearly doesn't apply here. While Jeff [Shonka] acknowledges that in other circumstances where Glens Falls fronted for FICOH they ceded all or a portion of the exposure back to FICOH, he doesn't have any documentation on the reinsurance side that such a retrocession applies here. He says the 1979 FICOH annual statement shows that some business was assumed from Glens Falls, but the underlying details aren't clear.

**CNA's search for documentation**

Since receipt of the Glens Falls Policy from Mr. Shonka, CNA has searched for, but was unable to locate, a written reinsurance or other agreement applicable to the Glens Falls Policy. Although that search continues, we recently discovered documentation in our historic financial records that a cession does in fact apply here. That search establishes that losses paid under the Glens Falls Policy have always been ceded to FICOH and that the Glens Falls Policy was fronted for FICOH. The search also establishes that it was a common practice for Glens Falls to issue fronting policies for FICOH and to cede losses on

the fronting policies to FICOH. A summary of CNA's search results follows. Also attached is the backup documentation.

The relevant data was found on CNA's MERLIN system. It includes data from CIC companies, such as Glens Falls, that merged with CNA in 1995. In the MERLIN data, ceded data is identified with an insurance type of C (Ceded) or a category code (4 or 5). The ceded transaction has either a treaty code identifying the treaty to which the claim / policy is ceded, or a reinsurance company code (RECO) identifying the individual reinsurer. MERLIN data identifies FICOH's RECO code as 1602.

When CIC and CNA merged, some of the historic CIC financial data did not transfer. Regardless, it is clear from the MERLIN data provided with this letter that FICOH reinsured the Glens Falls Policy, as well as many other Glens Falls policies issued to other insureds.

**Claim data related to the Glens Falls Policy**

For the Glens Falls Policy, MERLIN identifies a total of 26 claims made under the Policy. Three of those claims, which were set up between 2018 and 2020, relate to the recent abuse claims mentioned above. However, of the remaining 23 claims entered closer to the Policy's issuance, all of them have a ceded record with the cessions going to FICOH (RECO 1602). Of the 23 claims:

- 11 identify direct financials and 100 percent cession to FICOH (RECO 1602);
- 4 identify ceded financials to FICOH (RECO 1602); and
- 8 identify a ceded record with no financials, but list FICOH as the reinsurer (RECO 1602).

Exhibit 2 contains the MERLIN backup information for the Glens Falls Policy. This data clearly establishes that the Glens Falls Policy was 100 percent reinsured by FICOH. The information below also establishes that FICOH frequently reinsured Glens Falls policies on other accounts.

**Broader claim data review**

CNA also ran a MERLIN search for claims on other Glens Falls policies with effective dates of 1979 – 1982 and with Hawaii listed as the accident state. CNA used "accident state" because "premium state" was not an available search term for those policy years. Understandably, the search results likely included some Glens Falls policies for which Hawaii was not the premium state.

This broader claim search identified 2,361 claims. Of those 2,361 claims, 97% are booked consistently with specific cession to FICOH. For example:

- 2,285 claims had a data row for RECO 1602.
  - 1,349 claims had cessions to FICOH (RECO 1602).
  - 936 claims had zero financials (direct & ceded, or ceded).
- Only 76 claims had direct financials without ceded data.
- The only ceded records were for cessions to FICOH (RECO 1602).

Exhibit 3 contains the MERLIN backup information for this broader claim data review.

Please review this letter and the backup information provided, and let me know whether you would like to discuss further.  This data also suggests that FICOH has corresponding records in its own files and CNA would like to understand what searches have or could be done to identify those corresponding records.  CNA would like to resolve this issue quickly, as we expect mediations to be rescheduled in the near future.  If we are unable to reach agreement, CNA reserves all rights to assert that all expense and loss associated with the Glens Falls Policy is ultimately FICOH's responsibility.  All rights are reserved.

Sincerely,

Kristy L. Allen

IN THE UNITED STATES DISTRICT COURT

STATE OF HAWAII

| | |
|---|---|
| FIRST INSURANCE COMPANY OF HAWAII, LTD.,<br><br>        Plaintiff,<br><br>   vs.<br><br>CONTINENTAL INSURANCE COMPANY and CONTINENTAL INSURANCE AGENCY OF HAWAII, LTD.,<br><br>        Defendants. | CIVIL NO. CV 23-00198 JMS-RT<br><br>DEMAND FOR JURY TRIAL |

## **<u>DEMAND FOR JURY TRIAL</u>**

Continental demands a trial by jury on all issues so triable.

DATED: Honolulu, Hawaiʻi, May 5, 2023.

/s/ Thomas Benedict
_____
THOMAS BENEDICT
DAWN T. SUGIHARA

Attorneys for Defendant
CONTINENTAL INSURANCE
COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed

electronically and is available for viewing from the Court's ECF system.  Notice of

this filing will be sent to all counsel of record via the Court's ECF system.

DATED:  Honolulu, Hawaiʻi, May 5, 2023.


/s/ Thomas Benedict
THOMAS BENEDICT
DAWN T. SUGIHARA


Attorneys for Defendant
CONTINENTAL INSURANCE
COMPANY