IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FIRST INSURANCE COMPANY OF HAWAII, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL INSURANCE COMPANY,<br><br>Defendant. | CIV. NO. 23-00198 JMS-RT<br><br>ORDER DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM, ECF NO. 42 |

### ORDER DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM, ECF NO. 42

### I. INTRODUCTION

Plaintiff/Counter-Defendant First Insurance Company of Hawaii, Ltd. ("FICOH") moves to dismiss Count I of the counterclaim for breach of contract filed against it by Defendants/Counterclaim Plaintiffs Continental Insurance Company and Continental Insurance Agency of Hawaii (collectively, "Continental").  ECF No. 42.  FICOH asserts that the counterclaim does not sufficiently plead the existence of a contract.  Based on the following, the court DENIES FICOH's Motion to Dismiss.

## II.  BACKGROUND

On March 30, 2023, FICOH filed a complaint in the First Circuit Court of the State of Hawaii against Continental, seeking a declaration that it does not owe duties as a reinsurer of an insurance policy issued by Glens Falls Insurance Company ("Glens Falls"). ECF No. 1 at PageID.13. The Glens Falls policy was issued to the Roman Catholic Church in the State of Hawaii ("RCCH"), covering the period from June 1, 1979, to June 1, 1982. *Id.* at PageID.14. Insureds (e.g., the RCCH) under the Glens Falls policy have made claims against Continental—a successor in interest to, and servicer of, the Glens Falls policy—seeking coverage for claims of sexual-abuse from 1979 to 1982 that were made possible by Hawaii's passage of a statute-of-limitations reviver statute. *Id.* at PageID.15. In turn, Continental has asserted that FICOH is responsible for those claims as a reinsurer. *Id.*

Continental removed FICOH's Complaint to this court based on diversity of citizenship, and, on May 5, 2023, filed an Answer along with a two-count Counterclaim. *See* ECF Nos. 1, 7. Continental admits that a controversy exists as to whether FICOH has reinsurance duties, ECF No. 7 at PageID.50, and in Count I of the Counterclaim alleges that FICOH breached a contract by refusing

to pay Continental under a reinsurance agreement. ECF No. 7 at PageID.56.[1] Specifically, it alleges that "FICOH and Glens Falls agreed that FICOH would reinsure 100% of the risk from the Glens Falls Policy." *Id.* Count I of the Counterclaim further alleges:

> 24.  Continental has performed and satisfied its contractual obligations to FICOH by ceding the premium generated by the Glens Falls Policy to FICOH.
>
> 25.  FICOH previously accepted, acknowledged, and acted in total conformity with this reinsurance agreement by paying each of the first 23 claims arising under the Glens Falls Policy, which Glens Falls and/or Continental submitted to FICOH for payment.
>
> 26.  FICOH has materially breached the reinsurance agreement by refusing to pay Continental's recent billings under the agreement.

*Id.* at PageID.57.

Continental, FICOH, and Glens Falls have a former relationship. The Counterclaim explains:

> 5.  With one exception, FICOH continuously insured RCCH from at least 1951 through 1987.
>
> 6.  The exception was 1979 to 1982, when [Glens Falls], a former Continental subsidiary which has since been merged into Continental, issued to RCCH Policy No. L1294808 (the "Glens Falls Policy," attached [to the Counterclaim] as Exhibit A).

---

[1] Count II of the Counterclaim simply seeks related declaratory relief. ECF No. 7 at PageID.57–58.

> 7. At the time the Glens Falls Policy was issued, like Glens Falls, FICOH was also a wholly owned subsidiary in the Continental group of companies.

*Id.* at PageID.53. It notes that "FICOH was a wholly owned subsidiary in the Continental group until a 40% stock sale to Tokio Marine in 1988. Tokio Marine purchased an additional 10% of FICOH stock in 1999 and the rest of the company in 2011." *Id.* at PageID.53 n.2.

Given those alleged past relationships, the Counterclaim alleges the existence of a contractual reinsurance (or "fronting") agreement between FICOH and Continental, including the amount of coverage ("100% of the risk")—although it acknowledges that the parties have not located a written reinsurance contract:

> 9. In the course of handling and investigating these claims, Continental learned that FICOH had historically and regularly used Glens Falls and other Continental affiliates to "front" business that FICOH was unable to write. In other words, the Continental entity such as Glens Falls would issue the insurance policy and then transfer or cede 100% of the risk under that policy, pursuant to a reinsurance agreement, to FICOH. This was and remains a common industry practice, particularly between affiliated insurance entities, and is typically referred to as a 100% reinsurance agreement or a "fronting agreement."
>
> 10. The Glens Falls Policy was subject to such a fronting agreement, with FICOH assuming 100% of the risk under the Policy.

> 11. Neither Continental nor FICOH has located any formal written reinsurance contract memorializing this agreement.
>
> 12. Nevertheless, overwhelming evidence shows Glens Falls and FICOH agreed FICOH would reinsure 100 percent of the risk arising from the Glens Falls Policy.

*Id.* at PageID.53–54. And it alleges other facts indicating the existence of a reinsurance agreement, and attaches a complete copy of the Glens Falls policy (which was located in FICOH's records):

> 13. For example, when the RCCH claims were first asserted against the Policy, Continental was unable to locate a copy of the Glens Falls Policy in its files, but was supplied with the policy by FICOH, which had retained it in its policy records even though it was technically not issued as a FICOH policy in FICOH's name.
>
> 14. The Glens Falls Policy appears to have been written on a pre-printed FICOH policy form, with the name of the insurer FICOH simply crossed out of the form in several locations and Glens Falls typed in. (Ex. A.)
>
> 15. Continental has investigated historical claims data pertaining to the Glens Falls Policy. Continental's records reflect a total of 23 claims under the Glens Falls Policy that preceded the recent abuse claims. . . .
>
> 16. Continental's records indicate that each of those 23 historical claims—which were asserted much closer in time to when the Glens Falls Policy was issued than the recent abuse claims—were reinsured 100% by FICOH and that FICOH was billed for, and paid, the full amount

> of each of the first 23 claims made under the Glens Falls Policy.
>
> 17. Continental's investigation of prior claim activity was not limited to the Glens Falls Policy. Continental also reviewed its claim systems for other policies issued by Glen Falls during the same time period of 1979 to 1982, where the claim system reflected an "accident state" of Hawaii. Accordingly, this search identified claims or accidents connected to Hawaii and thus very likely involving policies issued to insure risks located in Hawaii.
>
> 18. Continental's records show that, for such Glens Falls issued policies with claims reflecting Hawaii as the "accident state," 97% of the more than 2,300 claims were billed 100% to FICOH, meaning FICOH had reinsured the risk under those policies issued by Glens Falls. . . .

*Id.* at PageID.53–55 (footnote omitted).

Based on those factual allegations, Continental's Counterclaim charges that FICOH has materially breached the reinsurance agreement, and that Continental has and will continue to sustain damages and expenses to pay RCCH's claims arising from the period of 1979 through 1982. *Id.* at PageID.53.

On July 17, 2023, FICOH filed its Motion to Dismiss Count I of Continental's Counterclaim. ECF No. 42. Continental filed its Opposition on September 25, 2023, ECF No. 56, and FICOH filed a Reply on October 2, 2023, ECF No. 57. The court held a hearing on October 16, 2023, ECF No. 58.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss "for failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and construe them in light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. 662 at 663.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).  But factual allegations that only present a possibility of misconduct do not demonstrate the pleader is entitled to relief pursuant to Rule 8.  *Id.*; Fed. R. Civ. P. 8(a)(2) (requiring that a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief).

## IV. DISCUSSION

### A. The Court Need Not Address Choice-of-Law Here

The parties initially disputed whether the court must apply substantive Hawaii or New York law in analyzing the Counterclaim. In particular, in its Motion, FICOH assumed that New York law applies, and analyzed whether the Counterclaim states a claim by applying New York precedent. *See* ECF No. 42-1 at PageID.267–269 & n.2. Continental's Opposition, however, applies Hawaii law, pointing out that where a court sits in diversity jurisdiction, federal courts must apply the substantive law of the forum of which the court is located, including the forum's choice of law rules. *See, e.g.*, *Jou v. Adalian*, 2018 WL 1955415, at *5 (D. Haw. Apr. 25, 2018). And under Hawaii's choice of law principles, courts "look[] to the state with the most significant relationship to the parties and the subject matter." *Mikelson v. United Servs. Auto. Ass'n*, 107 Haw. 192, 198, 111 P.3d 601, 607 (2005).

Nevertheless, the parties agree that the applicable contract principles here are largely the same under either Hawaii or New York law. *See* ECF No. 56 at PageID.314 n.2; ECF No. 57 at PageID.323. Where two jurisdictions' laws are the same, a choice of law analysis is unnecessary. *See, e.g.*, *Hamby v. Ohio Nat. Life Assur. Corp.*, 2012 WL 2568149, at *3 (D. Haw. June 29, 2012) ("If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law

analysis is unnecessary.") (quoting *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 (3d Cir. 2007)); *Hawaiian Telcom Comm'n, Inc. v. Tata Am. Int'l. Corp.,* 2010 WL 2594482, at *5 (D. Haw. May 24, 2010) ("This court need not determine whether the Hawaii choice of law analysis requires the application of Hawaii law or New York law because the applicable principles of contract interpretation are the same under either one . . . ."). The court therefore need not decide here whether Hawaii substantive law applies in this case. For present purposes, the court applies either Hawaii or New York law.

**B.     Count I of the Counterclaim Alleges a Plausible Claim for Breach of Contract**

FICOH argues that Continental's Counterclaim fails to allege facts sufficient to state a claim for breach of contract because it has not adequately pled the existence of a contract. ECF No. 42-1 at PageID.267. The court disagrees.

In deciding whether the existence of a contract is adequately pled, the court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And "insurance policies are subject to general rules of contract construction." *Keown v. Tudor Ins. Co.*, 129 Haw. 64, 67, 293 P.3d 137, 140 (Ct. App. 2012) (quoting *First Ins. Co. of Haw. v. State*, 66 Haw. 413, 423–24, 665 P.2d 648, 655 (1983)); *Downstairs Cabaret, Inc. v. Wesco Ins. Co.*, 132 N.Y.S. 3d 496, 498 (N.Y. App.

Div. 2020) (same). "There must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract." *Douglass v. Pflueger Haw., Inc.,* 110 Haw. 520, 531, 135 P.3d 129, 140 (2006) (quoting *Earl M. Jorgensen Co. v. Mark Constr., Inc.,* 56 Haw. 466, 470, 540 P.2d 978, 982 (1975)).

> The existence of mutual assent or intent to accept is determined by an objective standard. A party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective intention.

*Earl M. Jorgensen*, 56 Haw. at 470, 540 P.2d at 982; *see also Metropolitan Enters. N.Y. v. Khan Enter. Constr., Inc.*, 1 N.Y.S. 3d 328, 329 (N.Y. App. Div. 2015) ("To create a binding contract, there must be a meeting of the minds as to the material terms of the agreement . . . .") (New York law).

Taking the Counterclaim's factual allegations as true, *Twombly*, 550 U.S. at 556, the Counterclaim plausibly alleges the terms and context for a contract of reinsurance (a "fronting agreement") between FICOH and Glens Falls (Continental's predecessor). It alleges that FICOH assumed 100% of the risk for the years in question (1979 to 1982), ECF No. 7 at PageID.54, and that FICOH has paid in accordance with such an agreement 23 other times, *id.* at PageID.55. It explains—based on a prior corporate relationship where FICOH and Glens Falls were both related to Continental—a plausible basis for such a fronting agreement,

10

which was "a common industry practice, particularly between affiliated insurance entities." *Id.* at PageID.53–54.  Indeed, the Glens Falls policy itself was, according to the Counterclaim, a FICOH document that was found in FICOH's files.  *Id.* at PageID.54.  These allegations—again, taken as true for purposes of the Motion to Dismiss—are enough to constitute a "meeting of the minds" or "mutual assent" on the basic terms of a type of reinsurance agreement.  *Douglass*, 110 Haw. at 531, 135 P.3d at 140; *Metropolitan Enters.*, 1 N.Y.S. 3d at 329.

        FICOH faults the Counterclaim for failure to plead the existence of a written agreement, ECF No. 57 at PageID.326, and thus for failing to allege some terms of the reinsurance agreement such as dollar limits, treatment of damages for bad faith, or amounts of commissions, *id.* at PageID.324–25.  But the Counterclaim does not allege that the reinsurance agreement was only or completely an oral contract.  Rather, it clearly acknowledges that a formal written agreement from that timeframe (1979 to 1982) has not been found in the companies' files, ECF No. 7 at PageID.54.[2]

        Essentially, the Counterclaim alleges or implies that the actual reinsurance agreement is missing or lost.  And many federal courts have applied

---

[2] The court need not reach whether the Counterclaim is barred by the statute of frauds.  FICOH did not fully raise such an argument in its Motion to Dismiss when it mentioned the statute of frauds, and itself stated that the court "need not address this issue."  ECF No. 42-1 at PageID.269 n.1.  In any event, given the court's interpretation of the Counterclaim's factual allegations, the court does not address the statute of frauds here.

basic evidentiary principles to assess allegations of missing or lost insurance documents. These courts allow the introduction of secondary evidence governed by Federal Rule of Evidence 1004 to prove basic terms of a lost policy. *See, e.g.*, *MAPCO Alaska Petroleum, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 795 F. Supp. 941, 948 (D. Alaska 1991) ("Although [the insured] admits it was unable to locate the original policy after a good faith search, it can produce secondary evidence of the policy's existence."); *In re Catholic Bishop of N. Alaska*, 414 BR. 552, 555 (Bankr. D. Alaska 2009) ("[T]he insured may prove the existence of the policy and its terms through the offer of 'secondary evidence.'"); *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002) ("[A]n insured may rely on secondary evidence (i.e., evidence other than the policy itself) to prove the existence and terms of an insurance policy . . . ."). Lost policy question are matters of proof not pleading.

State law is the same. *See E.H.F. Wolters v. F.H. Redward*, 16 Haw. 25, 27 (Haw. Terr. 1904) (explaining that a party may offer secondary evidence of the contents of a lost paper if it can show it has in good faith exhausted in a reasonable degree all sources of information and means of discovery); *Schozer v. William Penn Life Ins. Co. of N.Y.*, 644 N.E.2d 1353, 1355 (N.Y. 1994) ("Under a long-recognized exception to the best evidence rule, secondary evidence of the contents of an unproduced original may be admitted upon threshold factual

findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence and has not procured its loss or destruction in bad faith.") (citations omitted).

At this motion-to-dismiss stage, the Counterclaim's allegations are sufficient to state a plausible claim for breach of an enforceable reinsurance agreement. Whether Continental can *prove* its allegations is not a question before the court at this juncture.

## V. CONCLUSION

Continental's Counterclaim in Count I is plausible on its face, setting forth enough detail to explain the existence of a contract. *See Twombly*, 550 U.S. at 555. The court thus DENIES FICOH's Motion to Dismiss, ECF No. 42.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 31, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*First Ins. Co. of Haw. Ltd. v. Continental Ins. Co.*, Civ. No. 23-00198 JMS-RT, Order Denying Plaintiff's Motion to Dismiss Counterclaim, ECF No. 42