Of Counsel:
FUKUNAGA MATAYOSHI CHING & KON-HERRERA

| | |
|---|---|
| WESLEY H. H. CHING | 2896-0 |
| SHEREE KON-HERRERA | 6927-0 |

1200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 533-4300
Facsimile:   (808) 531-7585
whc@fmhc-law.com; skh@fmhc-law.com

| | |
|---|---|
| AMOS FRIEDLAND | *Admitted Pro Hac Vice* |
| JORDANA HAVIV | *Admitted Pro Hac Vice* |
| RICHARD CIPOLLA | *Admitted Pro Hac Vice* |
| KATHARINE FRIEL | *Admitted Pro Hac Vice* |

Freedman Normand Friedland LLP
99 Park Avenue, 19th Floor
New York, NY  10016

Attorneys for Plaintiff
FIRST INSURANCE COMPANY OF HAWAII, LTD.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| FIRST INSURANCE COMPANY OF HAWAII LTD., <br><br> Plaintiff, <br><br> v. <br><br> CONTINENTAL INSURANCE COMPANY, <br><br> Defendant. | Case No. CV 23-00198 JMS-RT <br><br> **PLAINTIFF FIRST INSURANCE COMPANY OF HAWAII LTD.'S ANSWER TO COUNTERCLAIM, FILED MAY 5, 2023 [Dkt. 7]; CERTIFICATE OF SERVICE** |

1

# PLAINTIFF FIRST INSURANCE COMPANY OF HAWAII LTD.'S ANSWER TO COUNTERCLAIM, FILED MAY 5, 2023 [Dkt. 7]

Plaintiff and Counterclaim-Defendant First Insurance Company of Hawaii, Ltd.'s ("FICOH"), by and through its undersigned counsel, answers the Counterclaims dated May 5, 2023, filed by Defendant and Counterclaim-Plaintiff Continental Insurance Company ("Continental"), as follows:

## COUNTERCLAIMS

Each paragraph in Continental's counterclaims (*see* Dkt. No. 7) is copied below, followed by FICOH's answer to each paragraph. Any allegation not expressly admitted is denied.

1. This action involves FICOH's refusal, as a reinsurer, to pay the amounts it owes under a reinsurance agreement between FICOH, as a reinsurer, and Continental, as a ceding company and successor to The Glens Falls Insurance Company.

**ANSWER TO PARAGRAPH 1:** Denied.

2. Continental Insurance Company is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 151 N Franklin Street, Chicago, Illinois 60606, United States.

**ANSWER TO PARAGRAPH 2:** Admitted.

2

3.      FICOH is a corporation organized under the laws of the State of Hawaii, with its principal place of business at 1100 Ward Avenue, Honolulu, Hawaii 96814, United States.

**ANSWER TO PARAGRAPH 3:** Admitted.

**FICOH AGREED TO REINSURE THE GLENS FALLS POLICY**

4.      One of FICOH's longtime insureds in Hawaii was the Roman Catholic Church of Hawaii ("RCCH").

**ANSWER TO PARAGRAPH 4:** FICOH admits that it has issued insurance policies to the Roman Catholic Church of Hawaii ("RCCH").

5.      With one exception, FICOH continuously insured RCCH from at least 1951 through 1987.

**ANSWER TO PARAGRAPH 5:** FICOH admits that FICOH (or its predecessor Home Insurance Company of Hawaii, Ltd.) agreed to acknowledge policies were issued to settle litigation with the Roman Catholic Church of Hawaii covering the period from June 1, 1951 to June 1, 1979 and from June 1, 1982 to June 30, 1987.

6.      The exception was 1979 to 1982, when Glens Falls Insurance Company ("Glens Falls"), a former Continental subsidiary which has since been merged into Continental, issued to RCCH Policy No. L1294808 (the "Glens Falls Policy," attached hereto as Exhibit A).

**ANSWER TO PARAGRAPH 6:** Plaintiff admits that the Glens Falls Policy covers the Roman Catholic Church of Hawaii from 1979 to 1982, subject to the terms and conditions of the policy. Plaintiff further avers that the cited document speaks for itself. Plaintiff further admits that FICOH did not insure RCCH from 1979 to 1982.

7. At the time the Glens Falls Policy was issued, like Glens Falls, FICOH was also a wholly owned subsidiary in the Continental group of companies.[1]

**ANSWER TO PARAGRAPH 7:** <u>FICOH admits it was a wholly owned subsidiary in the Continental group of companies at the time the Glens Fall Policy was issued.</u> FICOH lacks knowledge or information sufficient to form a belief about the truth of Continental's allegation regarding Glens Falls' ownership.

8. Because of the passage of statute-of-limitations reviver statutes in Hawaii, Continental has in recent years incurred claims related to sexual abuse under the Glens Falls Policy.

**ANSWER TO PARAGRAPH 8:** Admitted.

---

[1] FICOH was a wholly owned subsidiary in the Continental group until a 40% stock sale to Tokio Marine in 1988. Tokio Marine purchased an additional 10% of FICOH stock in 1999 and the rest of the company in 2011.

9. In the course of handling and investigating these claims, Continental learned that FICOH had historically and regularly used Glens Falls and other Continental affiliates to "front" business that FICOH was unable to write. In other words, the Continental entity such as Glens Falls would issue the insurance policy and then transfer or cede 100% of the risk under that policy, pursuant to a reinsurance agreement, to FICOH. This was and remains a common industry practice, particularly between affiliated insurance entities, and is typically referred to as a 100% reinsurance agreement or a "fronting agreement."

**ANSWER TO PARAGRAPH 9:** FICOH lacks knowledge or information sufficient to form a belief about the truth of Continental's allegation regarding what Continental learned, and admits that it has used fronting arrangements to insure risks related to the continental United States in the past.

10. The Glens Falls Policy was subject to such a fronting agreement, with FICOH assuming 100% of the risk under the Policy.

**ANSWER TO PARAGRAPH 10:** Denied.

11. Neither Continental nor FICOH has located any formal written reinsurance contract memorializing this agreement.

**ANSWER TO PARAGRAPH 11:** Admitted.

12. Nevertheless, overwhelming evidence shows Glens Falls and FICOH agreed FICOH would reinsure 100 percent of the risk arising from the Glens Falls Policy.

**ANSWER TO PARAGRAPH 12:** Denied.

13. For example, when the RCCH claims were first asserted against the Policy, Continental was unable to locate a copy of the Glens Falls Policy in its files, but was supplied with the policy by FICOH, which had retained it in its policy records even though it was technically not issued as a FICOH policy in FICOH's name.

**ANSWER TO PARAGRAPH 13:** FICOH admits that FICOH's counsel located a copy of the Glens Falls Policy in boxes maintained by FICOH at its offsite storage facility.

14. The Glens Falls Policy appears to have been written on a pre-printed FICOH policy form, with the name of the insurer FICOH simply crossed out of the form in several locations and Glens Falls typed in. (Ex. A.)

**ANSWER TO PARAGRAPH 14:** No response is required, as the document speaks for itself.

15. Continental has investigated historical claims data pertaining to the Glens Falls Policy. Continental's records reflect a total of 23 claims under the Glens

Falls Policy that preceded the recent abuse claims. (Ex. B, Continental demand letter to FICOH at 3–4.)

>   **ANSWER TO PARAGRAPH 15:** FICOH lacks knowledge or information sufficient to form a belief about the truth of Continental's allegation regarding its internal investigation and records. FICOH further avers that the cited document speaks for itself.

16.   Continental's records indicate that each of those 23 historical claims—which were asserted much closer in time to when the Glens Falls Policy was issued than the recent abuse claims—were reinsured 100% by FICOH and that FICOH was billed for, and paid, the full amount of each of the first 23 claims made under the Glens Falls Policy.

>   **ANSWER TO PARAGRAPH 16:** FICOH lacks knowledge or information sufficient to form a belief about the truth of Continental's allegation regarding its internal records.

17.   Continental's investigation of prior claim activity was not limited to the Glens Falls Policy. Continental also reviewed its claim systems for other policies issued by Glen Falls during the same time period of 1979 to 1982, where the claim system reflected an "accident state" of Hawaii. Accordingly, this search identified

claims or accidents connected to Hawaii and thus very likely involving policies issued to insure risks located in Hawaii.[2]

**ANSWER TO PARAGRAPH 17:** FICOH lacks knowledge or information sufficient to form a belief about the truth of Continental's allegation regarding its internal investigation and records.

18.  Continental's records show that, for such Glens Falls issued policies with claims reflecting Hawaii as the "accident state," 97% of the more than 2,300 claims were billed 100% to FICOH, meaning FICOH had reinsured the risk under those policies issued by Glens Falls. (Ex. B.)

**ANSWER TO PARAGRAPH 18:** FICOH lacks knowledge or information sufficient to form a belief about the truth of Continental's allegation regarding its internal investigation and records. FICOH further avers that the cited document speaks for itself.

19.  Continental presented this evidence to FICOH, which demonstrated that FICOH had paid 100% of every single prior claim arising under the Glens Falls Policy, and that Glens Falls had also fronted numerous other policies for FICOH during this same period and that FICOH has also paid 100% of virtually all claims

---

[2] "Accident state" was the best available indicator in Continental's claims system to identify policies issued in Hawaii. That factor is a very strong, but imperfect, proxy for identifying the state where a policy was issued, because claims could be incurred in Hawaii even if the policy had been issued elsewhere.

arising under such other policies. Notwithstanding this overwhelming evidence of its agreement to reinsure 100% of the Glens Falls Policy, FICOH categorically refused to acknowledge such evidence, stating only that it would require a copy of a written reinsurance agreement from the late 1970s before it would consider acknowledging its obligations.

> **ANSWER TO PARAGRAPH 19:** FICOH admits that it received the document cited as Ex. B in the preceding paragraph. The remaining allegations of this paragraph are denied.

20.     Continental has currently paid more than $3.5 million in defense and indemnity under the Glens Falls Policy and expects that figure to grow substantially.

> **ANSWER TO PARAGRAPH 20:** FICOH lacks knowledge or information sufficient to form a belief about the truth of Continental's allegation.

## COUNT I—BREACH OF CONTRACT

21.     Continental incorporates the allegations of paragraphs 1–20 as though fully set forth herein.

> **ANSWER TO PARAGRAPH 21:** FICOH incorporates its responses to paragraphs 1-20 of the Counterclaims.

22.     FICOH and Glens Falls agreed that FICOH would reinsure 100% of the risk from the Glens Falls Policy.

> **ANSWER TO PARAGRAPH 22:** Denied.

23. This agreement to reinsure is a valid and enforceable contract and the evidence Continental has identified proves the material terms.

**ANSWER TO PARAGRAPH 23:** Denied.

24. Continental has performed and satisfied its contractual obligations to FICOH by ceding the premium generated by the Glens Falls Policy to FICOH.

**ANSWER TO PARAGRAPH 24:** Denied.

25. FICOH previously accepted, acknowledged, and acted in total conformity with this reinsurance agreement by paying each of the first 23 claims arising under the Glens Falls Policy, which Glens Falls and/or Continental submitted to FICOH for payment.

**ANSWER TO PARAGRAPH 25:** Denied.

26. FICOH has materially breached the reinsurance agreement by refusing to pay Continental's recent billings under the agreement.

**ANSWER TO PARAGRAPH 26:** Denied.

27. As a direct and proximate cause of FICOH's breach, Continental has sustained, and will continue to sustain, damages, including but not limited to additional defense and expense costs Continental will be forced to pay to RCCH, attorneys' fees, pre- and post-judgment interest, and costs.

**ANSWER TO PARAGRAPH 27:** FICOH denies that any reinsurance agreement relating to the Glens Falls Policy exists and therefore denies any "breach" and resulting damages.

## COUNT II—DECLARATORY JUDGMENT

28.   Continental incorporates the allegations of paragraphs 1–27 as though fully set forth herein.

**ANSWER TO PARAGRAPH 28:** FICOH incorporates its responses to paragraphs 1-27 of the Counterclaims.

29.   As demonstrated by the pre-suit exchanges between Continental and FICOH, as well as FICOH's refusal to pay the billings from Continental, an actual controversy exists regarding the reinsurance agreement between Continental and FICOH.

**ANSWER TO PARAGRAPH 29:** FICOH admits that there exists a controversy between the parties regarding whether FICOH is obligated to reinsure the Glens Falls Policy.

30.   Continental has properly billed FICOH under the reinsurance agreement, but FICOH has failed to honor its obligations under the agreement.

**ANSWER TO PARAGRAPH 30:** Denied.

31.   Under the reinsurance agreement, FICOH agreed to bear financial responsibility for 100% of the risk under the Glens Falls Policy and is therefore

responsible for paying Continental's current and future reinsurance billings related to the Glens Falls Policy.

**ANSWER TO PARAGRAPH 31:** Denied.

32. A declaration of the parties' rights and obligations under the reinsurance agreement will be useful to the parties, will promote settlement, and is an appropriate exercise of the Court's jurisdiction. *See* 28 U.S.C. § 2201; HRS § 632-1.

**ANSWER TO PARAGRAPH 32:** FICOH denies the existence of any reinsurance agreement and that Continental is entitled to any relief thereunder, but admits that a declaration of the parties' respective rights and obligations will be useful to the parties, will promote settlement, and is an appropriate exercise of the Court's jurisdiction.

**AFFIRMATIVE DEFENSES**

FIRST AFFIRMATIVE DEFENSE: STATUTE OF FRAUDS

The counterclaims against FICOH are barred, in whole or in part, based on the statute of frauds. The purported reinsurance agreement as alleged cannot be fully performed within a year and therefore must be in writing to comply with the statute of frauds. Continental fails to plead the existence of a written agreement between the parties.

## SECOND AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM

The claims against FICOH are barred, in whole or in part, based on Continental's failure to state a claim upon which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE: FAILURE OF CONSIDERATION

The claims against FICOH are barred, in whole or in part, based on Continental's failure to furnish sufficient consideration relating to the alleged reinsurance agreement.

## FOURTH AFFIRMATIVE DEFENSE

The claims against FICOH are barred, in whole or in part, based on Continental's lack of standing or privity.

## FIFTH AFFIRMATIVE DEFENSE

FICOH intends to rely on any and all other affirmative defenses, the applicability of which may be disclosed after further investigation and/or discovery.

## SIXTH AFFIRMATIVE DEFENSE

FICOH gives notice that it reserves the right to assert other affirmative defenses and other matters constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal Rules of Civil Procedure.

## **RIGHT TO AMEND**

FICOH respectfully reserves the right to amend its answer and to raise additional defenses to conform to the evidence to be presented at trial.

Dated: Honolulu, Hawaii, December 7, 2023.

          */s/ Wesley H. H. Ching*
          WESLEY H. H. CHING
          SHEREE KON-HERRERA
          AMOS FRIEDLAND
          JORDANA HAVIV
          RICHARD CIPOLLA
          KATHARINE FRIEL
          Attorneys for Plaintiff
          FIRST INSURANCE COMPANY OF
          HAWAII, LTD.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| FIRST INSURANCE COMPANY OF HAWAII, LTD., <br><br> Plaintiff, <br><br> v. <br><br> CONTINENTAL INSURANCE COMPANY and CONTINENTAL INSURANCE AGENCY OF HAWAII, LTD., <br><br> Defendants. | CIVIL NO. 23-CV-00198 JMS-RT <br><br> CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was hereby served on the following at their last known address Electronically through CM/ECF:

Thomas Benedict            tbenedict@fbslawyers.com
Dawn T. Sugihara           dsugihara@fbslawyers.com
Farm Benedict Sugihara LLP
Topa Financial Center, Bishop Street Tower
700 Bishop Street, Suite 1601
Honolulu, Hawaii  96813

AND

1

| | |
|---|---|
| Andrew M. Meerkins | ameerkins@foley.com |
| David J. Wenthold | dwenthold@foley.com |
| Foley & Lardner LLP | |
| 777 East Wisconsin Avenue | |
| Milwaukee, WI  53202 | |

AND

| | |
|---|---|
| Eric A. Haab  *[Pro Hac Vice]* | ehaab@foley.com |
| Foley & Lardner LLP | |
| 321 North Clark Street, Suite 3000 | |
| Chicago, IL  60654 | |

Attorneys for Defendant
CONTINENTAL INSURANCE COMPANY

DATED:  Honolulu, Hawaii, December 7, 2023.

    /s/ Wesley H. H. Ching
WESLEY H. H. CHING
SHEREE KON-HERRERA
AMOS FRIEDLAND
JORDANA HAVIV
RICHARD CIPOLLA
KATHARINE FRIEL
Attorneys for Plaintiff
FIRST INSURANCE COMPANY OF HAWAII, LTD.